[Crim. No. 3185.   Second Appellate District, Division One.—June 27, 1939.]

THE PEOPLE, Respondent, v. LOUIS DIAMOND, Appellant.

Morris Lavine for Appellant.

Earl Warren, Attorney-General, and R. S. McLaughlin, Deputy Attorney-General, for Respondent.

YORK, P. J.—By information appellant was charged in two counts with a crime of assault with a deadly weapon. Upon trial before the court sitting without a jury, he was found guilty of the crime of assault with a deadly weapon, as charged in count II of the information, and also guilty of violation of section 417 of the Penal Code, "a lesser offense than that charged in count I of the information but necessarily included therein". This appeal is prosecuted from the judgments of conviction which were thereafter entered herein.

The record discloses that the complaining witness Kiser was operating a service station located on premises owned by appellant, and on July 30, 1938, as charged in count II of the information, the two men had an argument over a statement purportedly made by Kiser to a man named Sutton. With reference to this occasion, the complainant testified that he was standing in front of the door of the service station and appellant was standing on the sidewalk, when the latter pulled a revolver out of his pocket which he held with his arm straight at the side with the muzzle of the gun pointing to the ground, and then whirling the gun around his head, but at no time pointing it at complainant, appellant said: "Don't come any closer; your life is in danger." Appellant denied having a gun in his possession and testified that he had accused Kiser of telling a lie and trying to make trouble and had told him "You are not going to make a Hitler place around my place." Appellant further testified that he had been shining his shoes and had a piece of gray cloth in his pocket which he pulled out when complainant Kiser came toward him. Upon this occasion Kiser called the police, but no arrests were made.

Peace apparently reigned between the two men for a little while, during which time appellant advertised for rent a garage located upon the said premises near the service station, but on August 21, 1938, another argument took place between them which caused appellant to be charged, as set out in count I of the information, this occurrence being testified to as follows by complainant Kiser: " . . . he left the keys for me to rent the garage when he went to Long Beach, so I didn't get the garage rented and I cleaned and swept it out, and I had my old Buick truck setting in there, and I had the doors open, and he (appellant) told me if I wanted my car left in there I was supposed to pay him $20.00 a month rent. So he told me to get it out of there right away. So I went and got

it out and I drove it out in front of the garage, and I said 'Diamond, you are no man of your word at all.' And I started out in my little Buick truck back in the garage, and he pulled the gun on me again, but he stayed in the garage when he did it. . . . I just got out of the old car—just probably ten feet out of the garage, and started back, and going to help him lock up the doors. I told him he was no man of his word. And he must have thought I was going to start something, because he pulled the gun on me again. . . . He told me the same thing, that my life was in danger; not to come near the garage. So I took his word for it.'' In answer to the question ''Did he point the gun at you on that occasion?'' complainant replied, ''Well, he had it a little bit more at me in the garage than he did out on the street.'' (He having testified that the gun was pointed at the ground on the occasion of July 30th, when appellant was standing in the street.)

The deputy sheriffs, who placed appellant under arrest after this second occurrence, testified that appellant repeatedly denied he had a gun, but finally admitted he had one upstairs in his bedroom where he handed it over to the officers, one of whom testified that the gun was loaded at that time.

At the conclusion of the trial, the court made the following comment: ''As to the first count, I don't know. There are only two things that stand out, that Mr. Sutton heard 'Don't come any closer; your life is in danger,' but he didn't see Mr. Diamond at the time the remark was made. Consequently, he doesn't know whether he had a gun or not. On both of these occasions the sheriff's office was telephoned to promptly. On both occasions the officers came, but the testimony varies as to the dates. There wouldn't be any occasion for a great big chap like Mr. Kiser telephoning to the sheriff's office, if all that Mr. Diamond had in his hand, on the first occasion particularly, was a gray shoe rag. That doesn't stand to reason either. He could take Mr. Diamond by one hand and do plenty of damage to him. I am convinced that on the first occasion there was a gun, particularly in view of the fact that Mr. Diamond lied on both occasions to the officers about the gun. He denied it on both occasions. It wasn't until they questioned him pretty hard on the second occasion that he admitted he had it. I find the defendant guilty on the first count. Now, as to the second count— *Mr. Smith:* Count one, your Honor, or is that the first occasion? *The Court:* The

first occasion. *Mr. Smith:* That is count two. *The Court:* Well, that is the first occasion. We have an abundance of testimony there. As to the second occasion, the corroboration is very slight. All that we have there is that again Mr. Kiser telephoned to the sheriff's office. Nobody overheard that altercation. The boy back there, Forthum, simply knows that after it was all over Mr. Kiser again telephoned the sheriff's office, and the men came down and they found the gun in that instance, but no one overheard the remarks, 'Stay away or your life is in danger.' As to the second occasion then, I shall find that he did draw and exhibit a gun, as provided in section 417 of the Penal Code, and on the first occasion, I find him guilty of assault with a deadly weapon. And he is remanded to the custody of the sheriff.'' Subsequently judgment was rendered ''that the defendant be confined in the County Jail of the County of Los Angeles for the period of one year, and pay a fine in the sum of $100.00; that in lieu of the payment of that fine he be incarcerated at the rate of a day for every $2.00. The sentence on each count to run concurrently.''

Appellant urges that (1) the evidence ''is insufficient to justify the verdicts as to either count of the information''; (2) the court was not authorized to find him guilty of a violation of section 417 of the Penal Code; (3) the judgment as to count I of the information was erroneous.

As hereinbefore stated, the information charged appellant with the commission of the crime of assault with a deadly weapon on July 30, 1938, with respect to which count the trial court found him guilty as charged. The evidence adduced in connection with this particular occurrence reveals that, while standing on the sidewalk in front of the service station at a distance of approximately six feet from the complainant Kiser, the appellant pulled a gun out of his pocket, ''held it with his arm straight at the side, and the muzzle pointing at the ground, and then with a whirling motion he whirled it around his head, still holding it in his hand and swinging it around his head'', at no time pointing it at the complainant, and said: ''Don't come any closer, your life is in danger.'' The deputy sheriff McVine, who responded to complainant's report of the incident which occurred on July 30th, testified that appellant denied he had a gun, and when said officer asked appellant if the latter would be willing to

have his house searched, appellant laughed and said, "I'm an honest man; you can take my word for it." Apparently the officer acquiesced in this view, because he further testified that he did not locate the gun on that occasion. The witness Sutton testified that he was present and heard appellant say "Don't come any closer; your life is in danger," and that, although both men were close to him and in plain view, he did not see appellant in possession of a gun. This testimony was corroborated by the witness Forthum, who was also present at this first altercation on July 30th. Appellant denied he pointed a gun at complainant, and testified that he had been shining his shoes and had put a piece of gray cloth in his pocket before he left his house, and "just to scare the big man away from me, I took it out and said, 'Don't come nearer.' "

It therefore appears that in so far as this first altercation is concerned, and with respect to which the appellant was found guilty of the crime of assault with a deadly weapon, the evidence is insufficient to sustain the judgment of guilt. No evidence of an actual assault is revealed by the record. The complaining witness admitted that the gun was not pointed at him and neither was it seen by either the witness Sutton or the witness Forthum, both of whom were present at the time in question. Furthermore, it was not located by the deputy sheriff, who subsequently called and questioned appellant with respect to it. In fact, it was not until almost a month later, at the time the second altercation took place, that a gun was finally produced.

As to the occurrence of August 21, 1938, as charged in count I of the information, the trial judge, as hereinbefore set out, commented upon the weakness of the evidence and found the appellant guilty of a violation of section 417 of the Penal Code. Said section provides: "Every person who, except in self-defense, in the presence of any other person, draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor."

"This offense is not included in a charge of assault with intent to murder, and therefore on a trial on an information charging the latter offense, the court may properly refuse to charge the jury upon the subject matter of section 417 of the

Penal Code. (*People* v. *Piercy*, 16 Cal. App. 13 [116 Pac. 322].) So, also, upon a prosecution for an assault with a deadly weapon the refusal to give an instruction based on the theory that the only offense committed was the crime of exhibiting a deadly weapon does not constitute prejudicial error where the jury is instructed that if the evidence failed to show an assault of any kind it would be their duty to acquit the defendant. (*People* v. *Delucchi*, 17 Cal. App. 96 [118 Pac. 935].)'' (26 Cal. Jur. 578, sec. 5.)

██ In the circumstances presented by the record herein, it cannot be said as a matter of law that the offense denounced by section 417 of the Penal Code is one necessarily included within the crime of assault with a deadly weapon. It was the duty of the trial court under the evidence adduced either to acquit appellant or find him guilty of the crime charged in count I. Since the maximum imprisonment for a violation of section 417 of the Penal Code is six months in the county jail (Pen. Code, sec. 19), it was error to sentence appellant to a term of one year in the county jail, even though that term was ordered to run concurrently to the sentence imposed on count II.

For the foregoing reasons the judgments herein are, and each of them is, reversed.

Doran, J., and White, J., concurred.