[Crim. No. 16377. Second Dist., Div. Four. Jan. 28, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT CURTIS CHAVIRA, Defendant and Appellant.

COUNSEL

Gilbert F. Nelson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jimmie E. Tinsley, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**KINGSLEY, J.**—Defendant was charged in three counts, as follows: count I, assault on Rafael Estrada, with a deadly weapon with intent to kill, in violation of section 217 of the Penal Code; count II, assault on Guillermo Camacho, Jr., with a deadly weapon with intent to kill, in violation of the same section; count III, maliciously discharging firearms at the dwelling inhabited and occupied by Camacho, in violation of section 246 of the Penal Code. The information was later amended to charge that defendant was armed with a rifle and a shotgun at the time of commission of all three offenses. After a jury trial, he was found guilty, under counts I and II, of violations of section 417 of the Penal Code (displaying a firearm in a rude and boisterous manner) and guilty of count III. Defendant was ordered committed to the Youth Authority. He has appealed; we affirm the judgment, with a modification hereinafter indicated.

At about 11 p.m., on May 10, 1968, defendant, accompanied by others, drove up to a car in which Camacho, Frank Duarte, and several other young men were riding, and made threats against the life of Duarte. At about 1 a.m., on May 11, 1968, Estrada, Camacho, Duarte, and other young men were congregated near Camacho's home, when a car containing defendant and four other persons drove up, defendant leaned out of the car and fired a shotgun, wounding Estrada. Defendant drove a few feet further, he and a companion alighted, and fired numerous shots at a group of young men in the driveway of Camacho's home; some shotgun pellets and gunshots hit the house.

Although defendant offered an alibi, and denied participation in the shooting, the jury obviously disbelieved him. The identification testimony for the prosecution, if believed, supported a finding that he either fired, or aided in the firing, of the shots involved in all three counts.

On this appeal, counsel argues: (1) that defendant was improperly convicted, under counts I and II, of violations of section 417, since that offense is not a necessarily included offense within section 217; (2) that the instructions on included offenses as to count III were inaccurate and confusing; and (3) that the evidence does not support a finding of guilt on count III. We reject all three contentions.

I

We need not discuss whether, on this record and in light of the language of the information as amended, a violation of section 417[1] was included within the allegations of the information so as to make applicable the doctrine announced in *People* v. *Marshall* (1957) 48 Cal.2d 394 [309 P.2d 456]. The record shows that the instruction that section 417 was an offense included within section 217 was requested by the defendant and was given at his request. In *People* v. *Leech* (1965) 232 Cal.App.2d 397 [42 Cal.Rptr. 745], this court reversed a judgment of conviction of a violation of section 417 under an information charging a violation of section 245, on the ground that section 245 (as is equally true as to § 217) could be violated without any display of a weapon, boisterously or otherwise, in the presence of another. But it does not appear, in that case, at whose request the section 417 matter had been injected into the trial. Although we deal here with a jury trial, we think the principle announced by this court in *People* v. *Hensel* (1965) 233 Cal.App.2d 834 [43 Cal.Rptr. 865], applies. The problem is, essentially, one of due process of law. A defendant may not be convicted of a crime that he did not commit (*People* v. *Wilson* (1969) 271 Cal.App.2d

[1] Unless otherwise indicated, all statutory references are to the Penal Code.

60 [76 Cal.Rptr. 195]), nor of a crime which he did not know was involved. ■ No problem here exists as to the first requirement, since the record clearly shows that the weapon was seen by the victims, was pointed at them, and fired; every element of a violation of section 417 appears. The second element is also satisfied. ■ Whether or not defendant was originally aware that he might be in danger of conviction of a violation of section 417, he invited that very danger when he requested an instruction on that section. Since this was before the case went to the jury, an amendment of the information could still have been made with his consent. The language we used in *Hensel* (p. 840) is equally pertinent here: "We conclude that the effect of the proceedings had in the trial court in this case was to accomplish an informal amendment of the information to include a charge which was supported by the evidence although not by the original information; and that defendant knowingly allowed the case to proceed to judgment on the information as thus amended. Having, by this method, secured an acquittal of the original charge, defendant may not now repudiate the proceedings in which he participated."

## II

Likewise, the objections now urged to the instructions on count III are unavailing. The record shows that the instructions complained of were given, without modification, at the request of defendant.

## III

It is argued, as to count III, that the evidence does not support the verdict. The argument takes two forms: (a) that the building involved was not "an inhabited dwelling house or occupied building," within the meaning of section 246,[2] because it does not appear that anyone was in the house itself when the shots were fired; and (b) that the shots were not fired "at" the building but "at" persons outside the building, with any hitting of the building being purely accidental.

■ (a) We agree with the Attorney General that the phrase "inhabited dwelling house" has the same meaning in section 246 as it has in section 460 of the same code, defining first degree burglary. It is settled that, in the burglary section, the building is "inhabited" if a person resides therein even though it be temporarily unoccupied. (*People* v. *Valdez* (1962) 203 Cal. App.2d 559, 563 [21 Cal.Rptr. 764].) The first contention fails.

---

[2]Section 246 reads as follows: "Any person who shall maliciously and wilfully discharge a firearm at an inhabited dwelling house or occupied building, is guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for not less than one or more than five years or by imprisonment in the county jail not exceeding one year."

■ (b) The evidence shows that the second series of shots were fired at a group of persons congregated in front of, and on the driveway leading to, Camacho's home. The persons shot at testified that they heard pellets and slugs hitting the house. The jury was instructed that, to convict under section 246, the shooting must have been with intent to hit the building.[3] The contention is that the evidence did not meet the test of the instruction. We disagree. An act done with a reckless disregard of probable consequences is an act done with "intent" to cause such result within the meaning of the words used in the instruction. Defendant and his associates, engaged in a fusillade[4] of shots directed primarily at persons standing close to a dwelling. The jury was entitled to conclude that they were aware of the probability that some shots would hit the building and that they were consciously indifferent to that result. That is a sufficient "intent" to satisfy the statutory requirement.

## IV

■ One matter requires action by us. As we have discussed above, the jury found defendant guilty of violations of section 417 under counts I and II. However, the formal commitment, as entered by the clerk, recites that he had been found guilty of violations of section 217—the violations originally charged. It is clear from the reporter's transcript that this was a clerical error. The trial judge, and the deputy district attorneys, all were aware of the verdict actually returned and commented on it; it was the fact of that verdict which induced the trial court to allow defendant to remain on bail pending his sentence and to allow bail pending this appeal. Under those circumstances, the judgment must be corrected. We have the power to make such correction here. (*People* v. *Ihm* (1966) 247 Cal.App.2d 388, 393 [55 Cal.Rptr. 599].)

The judgment (order of commitment) is modified by deleting therefrom

---

[3]The instructions were as follows:

"In a crime such as that of which defendant is charged in Count III of the information, there must exist a union or joint operation of act or conduct and a certain specific intent.

"In the crime of violation of Penal Code Section 246 there must exist in the mind of the perpetrator the specific intent to maliciously and willfully discharge a firearm at the dwelling inhabited and occupied by GUILLERMO CAMACHO, and unless such intent so exists that crime is not committed. CAL JIC 71.11"

"The specific intent with which an act is done may be manifested by the circumstances surrounding its commission. But you may not find the defendant guilty of the offense charged in Count III in this case unless the proved circumstances not only are consistent with the hypothesis that he had the specific intent to maliciously and willfully discharge a firearm at a dwelling inhabited and occupied by GUILLERMO CAMACHO but are irreconcilable with any other rational conclusion. CAL JIC 27-A"

[4]The testimony was that the shooting continued for several minutes, with at least 14 separate discharges of the shotgun.

the references to section 217 of the Penal Code and substituting therefor appropriate references to section 417 of the Penal Code; as so modified, it is affirmed. The superior court is directed to cause appropriate entries to be made in its records, reflecting our decision herein and thereafter promptly to advise the Department of the Youth Authority of such entries.

Files, P. J., and Dunn, J., concurred.