[Crim. No. 12602. First Dist., Div. One. Nov. 22, 1974.]

THE PEOPLE, Plaintiff and Respondent, v.
JERRY ANTHONY ESCARCEGA, Defendant and Appellant.

## COUNSEL

Thomas V. Roland, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, Robert R. Granucci and David Schneller, Deputy Attorneys General.

## OPINION

**ELKINGTON, J.**—Defendant Escarcega has appealed from a "judgment of conviction and sentence" which were rendered and entered following his conviction by a jury's verdicts, of grand theft (Pen. Code, §§ 484, 487), and of assault with a deadly weapon, in violation of Penal Code section 245, subdivision (a).

No contention is made that the verdicts were unsupported by the evidence placed before the jury. ■ But it is argued that certain evidence, two knives and a jacket found in an automobile driven by Escarcega, had been obtained in violation of the Fourth Amendment. The specific argument is that the officer had no right to follow and stop the automobile and to detain its two occupants. No contention is made, assuming validity of the detention, that there was an invalid search or seizure.

The trial court found against Escarcega on the issue.

We had previously made and filed our decision on this appeal affirming the judgment. But we granted a rehearing on the representation of Escarcega's appellate counsel that we had *"falsely"* misstated the "true state of affairs surrounding the vehicle stop." Particularly it was insisted that "[t]he statement in the opinion that the police radio broadcast gave some information about the name and address of one of the car's occupants is *false.*" (Italics added.)

We have considered the record and conclude that the complaints of counsel are groundless and contemptuous.

As often happens, counsel has chosen to argue the weight of the evidence and the credibility of witnesses in this reviewing court. He has shown an ignorance of, or an unwillingness to accept, the substantial evidence rule which is binding on him, his client, and this court.

■ The substantial evidence rule holds that when a court's finding or a jury's verdict is attacked on the ground that it is not sustained by the evidence, the power of an appellate court begins and ends with the determination whether there is any substantial evidence, contradicted or uncontradicted, which will support the findings or verdict. Questions of credibility must be resolved in favor of the fact finder's determination, and when two or more inferences can reasonably be drawn from the evidence, a reviewing court may not substitute its deductions for those of the trier of fact. If on any material point the evidence is in conflict, it must be assumed that the court or jury resolved the conflict in favor of the prevailing party. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784 [59 Cal.Rptr. 141, 427 P.2d 805]; *People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

The rule is expressly made applicable to decisions of a trial court resolving Fourth Amendment issues. (*Burke* v. *Superior Court,* 39 Cal.App. 3d 28, 32 [113 Cal.Rptr. 801]; *People* v. *Wilkins,* 27 Cal.App.3d 763,

770 [104 Cal.Rptr. 89]; *People* v. *Lee,* 3 Cal.App.3d 514, 525 [83 Cal.Rptr. 715].)

 We again state the evidence as it tends to support the ruling of the trial court.

A police officer had been informed by police radio of an altercation at a nearby college. The broadcast described two vehicles "which could possibly be related to [the] altercation," one of which was "an older model brown Cadillac." It also gave some information about the name and address of at least one of the cars' occupants.

Later that evening the officer observed a parked "brownish-gold '61 Cadillac," occupied by two men. The car soon drove off and was followed by the officer in his vehicle. As the Cadillac was traveling about 25-30 miles per hour its driver and passenger were observed changing seats. This changing of seats, as well as the earlier police communication describing the "older model brown Cadillac" of the college altercation, caused the officer to stop the car, and to question its occupants. The name on the driver's license of one, defendant Escarcega, matched the name which had earlier been broadcast on the police radio. Inquiry disclosed that the driver's license of the person who had relinquished the driver's seat to defendant Escarcega, had expired. At that time the officer observed in plain sight, in the console near the front seat, two knives, which respectively had seven and eight-inch blades. The car's occupants were arrested and the weapons were seized. Also seized was a jacket lying on the vehicle's rear seat; it had been stolen earlier that day during the college altercation.

We shall briefly discuss further the police radio broadcast giving "some information about the name and address of at least one of the cars' occupants." The arresting officer testified that after describing two vehicles connected with the college altercation, there was also in the broadcast "a name given which had an address on Delmas Avenue." Explaining how he related the name and address to the car he had stopped, the officer stated: "Well, at the car stop, upon receiving the original driver's driver's license, I observed the name on the driver's license, and the address which was also Delmas. I believe the address matched the APB [police broadcast]." From this evidence the trial court reasonably could have drawn, as do we, the inference that the broadcast "gave some information about the name and address of at least one of the cars' occupants."

We know of no rule which would ban a police officer from following an automobile which reasonably conforms to a description of one whose occupants had been involved in an altercation resulting in an all-points police broadcast. Indeed, no rule occurs to us which would prevent a

policeman from following a vehicle on a public highway . without any reason; certainly no unreasonable search or violation of privacy would be involved. Such conduct might be offensive, or officious or ill-mannered, but it is not *constitutionally* regulated. When the officer observed the driver and passenger changing seats in the moving vehicle ahead of him, probable cause for their detention or arrest for reckless driving (Veh. Code, § 23103), and driving without a valid driver's license (Veh. Code, §§ 12500, 14601), came into being.

We need not pass upon the question whether the scant information given the officer about the college "altercation," of itself would justify arrest or other detention of the Cadillac's occupants.

Neither error, nor abuse of discretion, is observed in the ruling of the trial court allowing the questioned evidence.

■ Escarcega's remaining assertion of error springs from the trial court's refusal to instruct the jury that he might be found guilty of the "lesser and necessarily included offense" of "exhibiting a deadly weapon," as defined and proscribed by Penal Code section 417.

Penal Code section 1159 has long provided that: "The jury, or the judge if a jury trial is waived, may find the defendant guilty of any offense, the commission of which is *necessarily* included in that with which he is charged, or of an attempt to commit the offense." (Italics added.)

A *necessarily* included offense exists when the charged offense as defined by statute, or as stated in the accusatory pleading, *cannot* be committed without also committing a lesser and included offense. (*People* v. *Cannady*, 8 Cal.3d 379, 390 [105 Cal.Rptr. 129, 503 P.2d 585]; *People* v. *St. Martin*, 1 Cal.3d 524, 536 [83 Cal.Rptr. 166, 463 P.2d 390]; *People* v. *Marshall*, 48 Cal.2d 394 [309 P.2d 456].) Well-known illustrations are the crime of theft (Pen. Code, § 484) which is necessarily committed in the greater offense of robbery (Pen. Code, § 211), and of misdemeanor assault (Pen. Code, § 240) which is necessarily included in aggravated felonious assaults (Pen. Code, §§ 217, 220, 245) and in rape by force and violence (Pen. Code, § 261).

It is of no consequence that the *evidence* at trial might also establish guilt of another and lesser crime than that charged.[1] ■ As indicated,

---

[1]*People* v. *Collins*, 54 Cal.2d 57, 60 [4 Cal.Rptr. 158, 351 P.2d 326], asserts no different rule. There defendants were charged with rape by force and violence (Pen. Code, § 261, subd. 3) against a girl whose age was not stated in the accusatory pleading. The evidence at trial established that she was 15 years old. The trial court, sit-

to constitute a "lesser and necessarily included offense" it must be of such a nature that as a matter of law and considered in the abstract, the greater crime as defined by statute or charged in the accusatory pleading, "*cannot be committed without* necessarily committing [such other] offense." This rule has been consistently reiterated. (See *People* v. *Preston*, 9 Cal. 3d 308, 319 [107 Cal.Rptr. 300, 508 P.2d 300]; *Kellett* v. *Superior Court*, 63 Cal.2d 822, 825, fn. 2 [48 Cal.Rptr. 366, 409 P.2d 206]; *Neal* v. *State of California*, 55 Cal.2d 11, 18 [9 Cal.Rptr. 607, 357 P.2d 839] [cert. den., 365 U.S. 823 (5 L.Ed.2d 700, 81 S.Ct. 708)]; *Gomez* v. *Superior Court*, 50 Cal.2d 640, 647-648 [328 P.2d 976]; *People* v. *Greer*, 30 Cal.2d 589, 596 [184 P.2d 512].) The lesser offense must "necessarily and at all times [be] included within another one." (*People* v. *Kehoe*, 33 Cal.2d 711, 713 [204 P.2d 321] [cert. den., 338 U.S. 834 (94 L.Ed. 509, 70 S.Ct. 39)].) "If, in the commission of acts made unlawful by one statute, the offender must always violate another, the one offense [i.e., the latter] is necessarily included in the other." (*People* v. *Thomas*, 58 Cal.2d 121, 128 [23 Cal.Rptr. 161, 373 P.2d 97] [cert. den., 371 U.S. 231 (9 L.Ed.2d 495, 83 S.Ct. 327)].)

█ And of course a concomitant rule has been that where the evidence reasonably supports a finding of guilty of such a *necessarily* included offense the accused, at least upon his request as here, is entitled to have the jury instructed on their authority to return such a verdict. (*People* v. *St. Martin, supra,* 1 Cal.3d 524, 533; *People* v. *Garcia,* 250 Cal.App.2d 15, 17 [58 Cal.Rptr. 186]; *People* v. *Moody,* 216 Cal.App.2d 250, 254 [30 Cal.Rptr. 785].) Failure to so instruct is error.

█ Escarcega's charge of assault with a deadly weapon was pleaded in the language of the statute, Penal Code section 245.

Penal Code section 417 defines a misdemeanor offense. It reads as follows: "Every person who, except in self-defense, in the presence of any other person draws or exhibits any firearm, whether loaded or unloaded, or any other deadly weapon whatsoever, in a rude, angry or threatening manner, or who in any manner, unlawfully uses the same in any fight or quarrel is guilty of a misdemeanor."

As indicated, to consummate such a crime the deadly weapon must be drawn or exhibited "*in a rude, angry or threatening manner,*" or used in a "*fight or quarrel.*"

---

ting without a jury, found defendants guilty of statutory rape (Pen. Code, § 261.5). The judgment was affirmed on the theory that rape (Pen. Code, § 261) constituted but *one offense* which could be committed in different ways. The court carefully avoided any conclusion that statutory rape was a different or lesser offense, included in the charge of rape by force and violence.

Obviously an assault with a deadly weapon may be perpetrated without drawing or exhibiting it in a rude, angry, or threatening manner, or using it in a fight or quarrel. It might be committed by a hidden sniper, or by a stealthy prison stabbing, or in other innumerable ways without at the same time being a violation of section 417. As said in *People* v. *Torres,* 151 Cal.App.2d 542, 544-545 [312 P.2d 9]: "Section 417 of the Penal Code forbids the unlawful use in a fight or quarrel of a deadly weapon and the exhibition of such a weapon in the presence of another person in a rude, angry, or threatening manner. An assault with a deadly weapon can be committed without violating any provision of Penal Code, section 417, as by firing a gun through a coat pocket without either drawing or exhibiting the weapon and without then being engaged in a fight or quarrel." (To the same effect see *People* v. *Chavira,* 3 Cal.App.3d 988, 991 [83 Cal.Rptr. 851], and *People* v. *Leech,* 232 Cal.App.2d 397, 399 [42 Cal.Rptr. 745].)

Following this rationale the Courts of Appeal of this state have expressly and consistently held that Penal Code section 417 does not cover or define an offense lesser than, and necessarily included within, the crime of assault with a deadly weapon as proscribed by Penal Code section 245. (See *In re Stanley B.,* 17 Cal.App.3d 530, 534, fn. 2 [95 Cal.Rptr. 116]; *People* v. *Rasher,* 3 Cal.App.3d 798 [83 Cal.Rptr. 724];[2] *People* v. *Siplinger,* 252 Cal.App.2d 817, 823 [60 Cal.Rptr. 914] [cert. den., 390 U.S. 983 (19 L.Ed.2d 1281, 88 S.Ct. 1105)]; *People* v. *Leech, supra,* 232 Cal. App.2d 397, 398; *People* v. *Torres, supra,* 151 Cal.App.2d 542, 544; *People* v. *Mueller,* 147 Cal.App.2d 233, 238 [305 P.2d 178]; *People* v. *Diamond,* 33 Cal.App.2d 518, 523 [92 P.2d 486]; *People* v. *Piercy,* 16 Cal.App. 13, 16 [116 P. 322].)

Escarcega's principal reliance is upon certain language found in *People* v. *Wilson,* 66 Cal.2d 749, 764 [59 Cal.Rptr. 156, 427 P.2d 820]. Wilson

---

[2]In *People* v. *Rasher,* above, defendant, charged with assault with a deadly weapon, was found guilty of violation of Penal Code section 417. Despite his contention that " 'section 417 is not necessarily a lesser included offense of section 245' " the judgment was affirmed. Although the appellate court recognized the rule that section 417 was *not* such an included offense, it found that defendant's "conduct in relation to the trial proceedings" justified denial of relief. Defendant had given notice at the trial that he intended to rely on section 417. He requested jury instructions that such an offense was lesser than and included within the charge, and the case was tried on the theory that he could be convicted of violation of either section 245 or section 417. Toward the end of the trial, for some tactical reason, defendant changed his mind and attempted unsuccessfully to withdraw the "lesser and included" instructions. The appellate court found that it made "little difference that the violation of section 417, Penal Code, was designated by the jury as a lesser included offense," since defendant's conduct had accomplished "an informal amendment of the information to include the charge of violation of section 417, Penal Code, . . ."

had been convicted of murder and of assault with a deadly weapon. One possible interpretation of the evidence was that the homicide accidentally resulted from the commission of acts denounced by Penal Code section 417. The court reversed the murder conviction for failure to instruct the jury on section 417, thus to allow a finding that the homicide resulted from the commission of a misdemeanor, and was accordingly manslaughter. (See Pen. Code, § 192, subd. 2.) There was, of course, at that point, no concern whether section 417 was a lesser offense, necessarily included within the murder charge.

The *People* v. *Wilson* court then considered the remaining charge of which Wilson was convicted, the assault with a deadly weapon. The court said (p. 764): "That judgment of conviction must be reversed for failure to instruct on section 417. 'An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another.' (Pen. Code, § 240.) Defendant did not shoot or strike Champion; had the jury been instructed on section 417 the evidence would have justified the conclusion that defendant committed a violation of that section rather than the assault found. (*People* v. *Carmen, supra,* 36 Cal.2d 768, 774-775.)"

This language, Escarcega insists, must be read as holding that the conduct proscribed by section 417 is necessarily committed in every Penal Code section 245 assault with a deadly weapon violation, requiring jury instructions such as he requested at his trial.

We are unable to so construe *People* v. *Wilson,* and for the reasons we now state.

The language of *People* v. *Wilson* must be given a reasonable interpretation. Nowhere did the court discuss or consider the rationale of the "lesser and necessarily included offense." Nor did the court hold that the elements of section 417 were necessarily included in a charge of assault with a deadly weapon. Demonstrably, according to long-established principles, section 417 is not such a necessarily included offense. And it is significant that the court showed no purpose to overrule or modify those principles. Further, if the purpose was to hold the forbidden conduct of section 417 to be necessarily included in an assault with a deadly weapon charge, we may reasonably conclude that the court would have contemporaneously disapproved the many contrary Court of Appeal decisions which were then extant.

Since the decision in *People* v. *Wilson,* the Supreme Court has consistently reaffirmed the rule that a lesser and necessarily included offense

is one which must "necessarily be committed" if a crime such as that charged is perpetrated. (See *People v. Preston, supra,* 9 Cal.3d 308, 319; *People v. Cannady, supra,* 8 Cal.3d 379, 390; *People v. St. Martin, supra,* 1 Cal.3d 524, 536; *People v. Francis,* 71 Cal.2d 66, 73 [75 Cal.Rptr. 199, 450 P.2d 591].) ▪ "It is an established rule of law that a later decision overrules prior decisions which conflict with it, whether such prior decisions are mentioned and commented upon or not." (*In re Lane,* 58 Cal.2d 99, 105 [22 Cal.Rptr. 857, 372 P.2d 897].)

Finally, we advert to the cited authority appended to the heretofore quoted language of *People v. Wilson.* Nothing is seen in *People v. Carmen,* 36 Cal.2d 768, 774-775 [228 P.2d 281] which lends any support to the theory that commission of a Penal Code section 417 offense *necessarily* results from a section 245 assault with a deadly weapon.

We observe in *People v. Coffey,* 67 Cal.2d 204, at page 222 [60 Cal. Rptr. 457, 430 P.2d 15], a footnote stating: "The jury herein was properly instructed that section 417 sets forth a lesser offense necessarily included in [Pen. Code, §§ 217, assault with intent to commit murder, and 245, assault with a deadly weapon]. (Cf. *People v. Wilson* (1967) 66 Cal.2d 749, 757-761 . . . .)" An examination of *People v. Coffey* discloses that the quoted statement of the court was not responsive to any issue raised, and was unnecessary to the decision of that case. The statement is dictum, and under well-known rules may be considered as without precedential value. (See *Norris v. Moody* (1890) 84 Cal. 143, 149 [24 P. 37]; *People v. Gregg* (1970) 5 Cal.App.3d 502, 506 [85 Cal.Rptr. 273]; *People v. Goree* (1966) 240 Cal.App.2d 304, 310 [49 Cal.Rptr. 392]; 6 Witkin, Cal. Procedure (2d ed.) Appeal, § 676, pp. 4589-4591.)

▪ For the reasons stated we hold that the trial court properly refused to instruct on Penal Code section 417, as a lesser offense necessarily included within the charge of assault with a deadly weapon.

The "judgment of conviction and sentence" are affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 29, 1975. Tobriner, J., was of the opinion that the petition should be granted.